```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES THORPE,                                  :
                                               :
            Plaintiff,                         :       Civil Action. No.7:18-cv-2606
                                               :
     v.                                        :
                                               :       COMPLAINT
D'ANNUNZIO CONSTRUCTION CORP.                  :
and LABORERS' UNION LOCAL 17                   :       JURY TRIAL DEMAND
                                               :
            Defendants.                        :
------------------------------------------------------------X
```

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and retaliation. As charged with greater particularity below, Defendant D'Annunzio unlawfully created a hostile environment based on plaintiff's race, Black, and failed to take proper remedial measures to correct the unlawful harassment, as did plaintiff's Union, when Thorpe complained about the discrimination and hostile working conditions to which Thorpe had been subjected.

Further, Thorpe on several occasions complained about the racial harassment and retaliation by co-workers, and defendant D'Annunzio further retaliated against him by placing him in unsafe working conditions, and then unlawfully opposing his Workers' Compensation claim after Thorpe was injured at work. Defendant Laborers' Union Local 17 also created and tolerated a hostile environment by its members and supervisors because of plaintiff's race, and further retaliated against him when he complained about racial harassment.

## JURY DEMAND

1. Plaintiff James Thorpe ("Thorpe"), demands a trial by jury of all issues in this action.

**JURISDICTION, PARTIES AND VENUE**

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) (1990) ("the CRA").

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

4. Plaintiff James Thorpe resides in Orange County, and was employed by D'Annunzio Construction Corp. for approximately six weeks in September and October 2016.

5. At all relevant times, defendant D'Annunzio Construction Corp. ("D'Annunzio" or "the Construction Corp.") has continuously been doing business in the State of New York, and has continuously had at least 15 employees.

6. At all relevant times, defendant D'Annunzio has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this case arises under the laws of the United States, in particular the CRA, 42 U.S.C. §2000e, *et. seq*.

8. Venue is appropriate here, because the events about which plaintiff complains occurred in the town of Middletown, New York, which is in Orange County, New York, and which is an appropriate location for actions brought in this federal court.

9. All administrative prerequisites have been met as plaintiff filed a charge of

discrimination with the Equal Employment Opportunity Commission and the New York State Division of Human Rights against defendant D'Annunzio and received a Determination of Probable Cause from the latter Agency. He subsequently received a Right to Sue Letter from EEOC and an Adjournment in Contemplation of Dismissal from the New York State Division of Human Rights.

10. More than thirty days prior to the institution of this lawsuit, James Thorpe filled charges with the Commission alleging violations of Title VII by defendant D'Annunzio. All conditions precedent to the institution of this lawsuit have been fulfilled.

11. In addition, plaintiff brings an additional claim under New York State Executive Law §§296(1)(a) and §297, the Human Rights Law, alleging that defendant Laborers' Union Local 17 tolerated racial harassment and retaliated against Thorpe for complaining of racial harassment by his supervisor and co-workers. This action against Laborers' Union Local 17 is properly brought under the New York Human Rights Law in the first instance as a court action, and with no required administrative pre-requisites. The union is a covered employer and labor organization.

12. At all relevant times, defendant Laborers' Union Local 17 ("the Union" or "the Local" or "Local 17") has continuously been doing business in the State of New York as a labor organization, covering laborers in the Hudson Valley and Capital Region of the State.

13. As such, plaintiff requests that the court take supplemental jurisdiction over the New York State law claims against both defendants, pursuant to 28 U.S.C. §1367(a). The facts are so closely related in the same "nucleus of operative fact" with the federal CRA claim against defendant D'Annunzio such that judicial economy favors discovery and trial in one judicial proceeding.

## FACTUAL ALLEGATIONS

14. In approximately mid-September, 2016, Thorpe began working for as a laborer for defendant D'Annunzio on a job at a Monroe, New York job site. Thorpe first worked as a flagger, and then was promoted to laborer duties at a higher wage. At this location, plaintiff often worked directly for defendant's foreman, Jack Rodrigues ("Rodrigues")

15. Both Rodrigues and Thorpe, as well as other workers' at the location, were members of defendant Laborers' Union Local 17. Further, other workers at the location were members of the Union.

16. For jobs in the Union's local area, the Union had officers responsible for protecting its members' workplace rights and conditions, such as local representative and officer Jeffrey DiOrio and Chris Cerone ("Cerone"). Those two individuals had responsibility for assuring enforcing safe working conditions and work rules on behalf of its members while working operations were conducted, as well as representing union members.

17. Plaintiff is a very tall, fit, and strong Black man. At or about that time, , routinely and repeatedly referred to plaintiff whenever someone had some work to do or a question of moving items, as go get the "Big Black guy's" help or would direct other workers to ask the "Big Black guy" how to complete a job task.

18. Plaintiff repeatedly objected to Rodrigues about being called that and repeated that he "had a name" while asking Rodrigues to use Thorpe's name. After plaintiff became angry and finally raised his voice at Rodrigues, Rodrigues finally stopped referring to plaintiff with the racial description.

19. At that time, Thorpe telephoned the Local and complained about the

4

harassment by Rodrigues. Once, while going inside the work trailer, Thorpe also complained to D'Annunzio's job Superintendent Jonathan Larney ("Larney") about being called the Black guy. Larney only responded that "that's just Jack," and advised Thorpe not "to worry" about him.

20. Rodrigues on more than one occasion referred to Thorpe as "porta", a name he understood to have some derogatory meaning in Portuguese. Rodrigues was warned by another foreman to watch himself using that term.

21. Thorpe learned of other derogatory and racist language at work, including Rodrigues referring to Mexican workers as "wetbacks."

22. On or about September 28, 2016, plaintiff was working with Rodrigues in a deep hole, where plaintiff had responsibility for lowering some tools in a bucket through a hole, and the buck became stuck in a mesh placed near the hole. Rodrigues became inpatient with the delay, and yelled to plaintiff below that he "should put the rope around his own neck." Plaintiff objected to this comment, believed it was a racial reference to hanging, and objected to Rodrigues. He told Thorpe to get back to work.

23. In fact, approximately one month later, on or about October 27, 2016, Rodrigues assigned plaintiff to work alone in a remote area with another Union member, John Giraudin ("Giraudin"). There was one other coworker named Mike who was working in another nearby area.

24. At that time, Thorpe was working using a vacuum truck. Another worker was tying a knot performing some work near the vacuum truck. Plaintiff was at the back of theZ truck, securing a hose to the brackets in the back of the vacuum truck. While Thorpe was in the area at the back of the truck, Giraudin placed a giant knot on the inside mirror of the vacuum truck that he was driving, while it sat and Thorpe finished his work in the back.

5

25. The knot was in the shape of a giant hangman's noose. When Thorpe came around to the driver's side of the truck and saw it hanging from the mirror, he was shocked. Thorpe was not only offended, but experienced fear of violence, given his previous interchange with Rodrigues and the Union.

26. On or about October 27, 2016, Thorpe found the noose hanging on the driver side of a vacuum truck where he had been working. When he informed Rodrigues about the noose, Giraudin responded to Rodrigues and Thorpe that he did not know how to tie any other knot.

27. Thorpe then complained to Rodrigues and by telephone to his union representative, Wayne Mackey, from the Union. Chris Cerone from the Union then came to the worksite, and met with Thorpe, Rodrigues, Larney and James D'Annunzio, Vice President, about the noose. Thorpe explained what occurred, the threatening nature of the noose, and his fear of racial attack. Cerone told Thorpe not to worry, and that Thorpe was over-reacting to the noose. D'Annunzio stated that Giraudin had not intended anything racial or threatening of violence, and D'Annunzio stated Giraudin wasn't that type of person; Larney and Cerone agreed. They all implied that Thorpe had over-reacted in his views about the noose, racism, and the threat. Cerone told him: "In this business, you have to have tough skin."

28. After the meeting, Cerone, asked Thorpe what he wanted to do, and told him that he could pull Thorpe off the job if he wanted that. Thorpe responded that he had not done anything wrong, and should not lose his job because of others' actions.

29. The next day, Thorpe went to see Cerone, and he told Thorpe that he didn't even write a report about the incident, because he just thought it was a misunderstanding. In fact, Cerone now denied knowing anything about a noose. DiOrio told Thorpe that D'Annunzio

was one of the preferred signatory contractors and he didn't "want to see going from getting a high wage to making nothing."

30. On or about Sunday, October 30, Thorpe filed a police complaint regarding the noose that Giraudin had hung.

31. On Monday, October 31, Rodrigues still persisted in asking Thorpe to again work with Giraudin, and plaintiff objected. Thorpe objected to working with Giraudin, explaining that he worried about his own safety working alone with him. In fact, that next day on November 1, Thorpe told Giraudin about his fear that Giraudin intended bodily harm. Giraudin expressed remorse for having placed the noose on the truck and so closely to Thorpe. He told Thorpe that he had done so because it reminded him of his friend who had hung himself. Thorpe found this both threatening and not a sincere explanation. Thorpe informed Giraudin that the noose represents hundreds of years of Blacks being lynched.

32. Nevertheless, Rodrigues still insisted and assigned Thorpe to work in an area where there was a 50- foot hole, in a remote area working alone with Giraudin. Thorpe was left alone at the bottom of the 50- foot hole, while working below for approximately 10 minutes without a spot man who should have been necessary to watch for safety reasons. Plaintiff feared greatly for his safety, given his prior complaints to defendant and the union, his prior experience with Giraudin, and defendants' lack of concern for his safety and complaints about harassment. Plaintiff yelled up asking for a spot man, and Rodrigues cursed and told him not to be yelling.

33. On the next day, November 1, Rodrigues again instructed Thorpe to work with Giraudin in an isolated area. While Giraudin worked as an excavator operator moving and swinging pipes with the heavy machine, plaintiff was nearby loading pipes onto a truck.

34. Plaintiff was again scared working with Giraudin alone and near such heavy equipment, and he again telephoned his union representative, this time speaking with DiOrio. DiOrio explained that "these contractors talk" and he "didn't want" Thorpe "to get blackballed." DiOrio only told Thorpe that he would see what he could do.

35. The next day, November 2, Thorpe explained to Rodrigues again that he did not feel safe working with Giraudin in a remote place with 2000 lb. pipes swinging near him.

36. A short time later, while working plugging in the blowers and a generator, Thorpe slipped on some gravel and injured his knee while working. Rodrigues completely ignored him and did not even respond when Thorpe reported the injury to him. Within the next days, Thorpe again reported the injury to Rodrigues and heard from Larney in a text that the company would be looking at his request. Upon information and belief, Rodrigues and Larney treated Thorpe differently than other injured workers because of his race, and in retaliation for having made complaints of race discrimination and refusing to work with a man who had tied the large hangman's noose.

37. Following this serious knee injury, plaintiff filed a Worker's Compensation claim directly with the State of New York, in order to recover medical costs and lost wages from his inability to work after the workplace injury. However, D'Nunnzio has repeatedly contested such charge, even though it knows that he experienced the injury at work, and has repeatedly retaliated against plaintiff for having complained about race discrimination. It has presented pretextual and knowingly false information, alleging that Thorpe was no longer working on the day of the accident, despite the evidence in its own payroll records.

38. Defendant D'Annunzio, by continually resisting Thorpe's entitlement to Worker's Compensation benefits when it knows full well that plaintiff suffered the injury while

employed at work, retaliates against Thorpe for his complaints of racial discrimination during his work at defendant. This has caused substantial physical and emotional harm to plaintiff in that he has been deprived of or delayed in receiving any backpay or income source during the period after he injured his knee at work, and during late 2016 and 2017 substantially delayed his ability and authorization to receive the required medical and surgical treatment for his knee.

39. In sum, Defendants both allowed and permitted racial language and physically threatening racial behavior on a construction work project, while failing to remedy the hostile environment after Thorpe repeatedly complained to their responsible officers and representatives.  Both defendants failed to remedy the racial statements made by foreman and Union member Rodrigues, or the hangman's noose at the isolated worksite, or the threat of violence from working in an isolated area with the maker of the hangman's noose.  They failed to remedy the hostile environment, and the Union only offered to remove Thorpe from the high-paying work, doing nothing to protect Thorpe or his right to work earnings.  Further, defendant D'Annunzio engaged in additional retaliation after Thorpe suffered a serious workplace injury and medical injuries.   D'Annunzio's fighting Thorpe's claim for workers' compensation benefits when it full well knows that he was employed on that day is retaliatory and has caused Thorpe additional emotional and physical harm.

## FIRST CAUSE OF ACTION

### Title VII Action against D'Annunzio

40. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint as if set forth herein.

41. Defendant violated Title VII as alleged above.   D'Annunzio, through its superintendent and foreman, tolerated racist statements and threats of its foreman and other co-

workers, created a hostile environment on the basis of race. Defendant D'Annunzio, through its superintendent Larney and its knowledge of such harassment and unwillingness to correct it, created and participated in creating a hostile environment on the basis of race.

42. Further, defendant D'Annunzio's opposition to Thorpe's claim for workers' compensation benefits is a retaliatory act against plaintiff for having repeatedly complained about the racial harassment. Its refusal, through Rodrigues and Larney, to even accept Thorpe's workers' compensation claim, as well as its non-sensical denial of Thorpe's work status as a D'Annunzio employee, further evidence its retaliatory intent.

43. As such, plaintiff has suffered from defendant D'Annunzio's creation and knowledge about the racial harassment, and he has suffered emotional harm and upset. Further, Thorpe has experienced emotional harm from defendant's retaliatory acts in subjecting him to increased fear and threat of violence, but particularly in its retaliatory acts in opposing his right to workers' compensation benefits. Such has substantially delayed his physical recovery, caused him further physical harm and an inability to obtain the appropriate and complete treatment and surgery, as well as causing further emotional upset, and denial and delay in the payment of benefits necessary to his own support and that of his family. Thorpe thus claims compensatory damages under Title VII for physical and emotional harm, as well as punitive damages for defendant's actions taken with malice and reckless disregard for the law, including its participation, knowledge, and then failure to remedy the unlawful harassment.

## SECOND CAUSE OF ACTION

**Human Rights Law, Executive Law §296 (1)(a) Against Defendant D'Annunzio**

44. Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint as if

set forth herein.  D'Annunzio, through its superintendent and foreman, tolerated racist statements and threats of its foreman and other co-workers, created a hostile environment on the basis of race.   Defendant D'Annunzio, through its superintendent Larney and its knowledge of such harassment and unwillingness to correct it, created and participated in creating a hostile environment on the basis of race.

45. Further, defendant D'Annunzio's opposition to Thorpe's claim for workers' compensation benefits is a retaliatory act against plaintiff for having repeatedly complained about the racial harassment.  Its refusal, through Rodrigues, to even accept Thorpe's workers' compensation claim, as well as its non-sensical denial of Thorpe's work status as a D'Annunzio employee, further evidence its retaliatory intent.

46. As such, plaintiff has suffered from defendant D'Annunzio's creation and knowledge about the racial harassment, and he has suffered emotional harm and upset. Further, Thorpe has experienced emotional harm from defendant's retaliatory acts in subjecting him to increased fear and threat of violence, but particularly in its retaliatory acts in opposing his right to workers' compensation benefits.  Such has substantially delayed his physical recovery, caused him further physical harm and an inability to obtain the appropriate and complete treatment and surgery, as well as causing further emotional upset and the denial and delay in the payment of benefits necessary to his own support and that of his family. Thorpe thus claims compensatory damages for physical and emotional harm under the Human Rights Law.

## THIRD CAUSE OF ACTION

**Human Rights Law, Executive Law §296 (1)(a) Against Defendant Local 17**

47. Plaintiff repeats and realleges paragraphs 1 through 46 of this Complaint as if

set forth herein. Local 17, through its union representatives and officers, tolerated racist statements and threats of its foreman and other co-workers, created a hostile environment on the basis of race. Defendant Local 17 had knowledge of such racial harassment by its members, including the repeated actions and statements of Rodrigues and Giraudin, and failed to remedy and correct the hostile environment created by Thorpe's co-workers. Thorpe repeatedly complained of the racial statements, the noose, and the threats of being left alone with someone who had presented him with a large hangman's noose, and defendant Local 836 took no action, except to declare that Thorpe had misunderstood the noose and that he should continue to perform his work. In the alternative, it offered to remove Thorpe from the worksite, even after the pattern of racial statements and physical threats.

48. In tolerating the hostile environment on the basis of Thorpe's race, and the physical threats implicit in assigning Thorpe to a dangerous physical situation immediately before Thorpe's injury, defendant Local 17 participated in racial harassment and retaliation.

49. Further, Local 17's participation and agreement in assigning Thorpe to work in an isolated area with Giraudin after the noose incident, is a retaliatory act against plaintiff for having repeatedly complained about the racial harassment.

50. As such, plaintiff has suffered from defendant Local 17's creation and knowledge about the racial harassment, and he has suffered emotional harm and upset. Further, Thorpe has experienced emotional harm from defendant Local 17's retaliatory acts in subjecting him to increased fear and threat of violence. Thorpe thus claims compensatory damages against defendant Local 17 for emotional harm under the Human Rights Law.

**WHEREFORE**, Plaintiff James Thorpe demands judgment against Defendant as follows:

      (a)     on the First Cause of Action, an award of statutory damages, including compensatory damages for physical and emotional harm and punitive damages against defendant D'Annunzio, the exact amount to be proven at trial; including, but not limited to, attorneys' fees, costs and disbursements incurred in connection with this action; and

      (b)     on the Second Cause of Action, an award of statutory damages, including compensatory damages for physical and emotional harm against defendant D'Annunzio, the exact amount to be proven at trial; including, but not limited to costs and disbursements incurred in connection with this action; and

      (c)     on the Third Cause of Action, an award of statutory damages against defendant Local 17, including compensatory damages for physical and emotional harm, the exact amount to be proven at trial; including, but not limited to costs and disbursements incurred in connection with this action

**WHEREFORE**, Plaintiff James Thorpe also requests injunctive relief such that defendant D'Annunzio cease and desist from any further challenge to Thorpe's right to Workers' Compensation benefits due from the physical injury he suffered while employed with defendant D'Annunzio.

Dated: Goshen, New York
March 23, 2018

FOULKE LAW FIRM

By:   *s/Michael Ranis, Esq.*
Michael Ranis, Esq. (MBR #3757)
ATTORNEYS FOR PLAINTIFF
55 Main Street, 2nd Floor
Goshen, NY  10924
845-294-4308

13